## WALTER S. NEWHALL CO. v. BALTIMORE & O. R. CO.

### (District Court, D. Maryland. June 24, 1919.)

1. PATENTS ⊂⟝287—INFRINGEMENT—JOINT TORT-FEASORS.

   An infringement is a tort, and any one who aids in it is answerable.

2. PATENTS ⊂⟝316—INFRINGEMENT—INJUNCTION.

   Where thawing shed, as originally constructed and experimentally used by contractors, was equipped with certain dampers, which were removed before the shed was turned over to defendant, and the dampers could be put back in a few hours at a trifling expense, plaintiff is entitled to an injunction forbidding replacement of dampers or the equivalents, certain claims of plaintiff's patent being infringed if dampers are replaced.

3. PATENTS ⊂⟝319(1)—INFRINGEMENT—RECOVERY.

   Where, with full knowledge of plaintiff's patent and that it would be infringed, defendant gave the contract for erection of thawing shed to another, because the latter was willing to put up the structure at a less cost and to furnish a bond against the consequences of infringement, plaintiff is entitled to be made whole.

In Equity. Suit by the Walter S. Newhall Company against the Baltimore & Ohio Railroad Company. Decree for plaintiff.

Haman, Cook, Chesnut & Markell, of Baltimore, Md., Prichard, Saul, Bayard & Evans, of Philadelphia, Pa., and Albert H. Bates, of Cleveland, Ohio, for plaintiff.

Duncan K. Brent, of Baltimore, Md., and Albert C. Fraser, of New York City, for defendant.

ROSE, District Judge. In an opinion heretofore handed down in this case (243 Fed. 615), it was held that the patent in suit was valid and that the defendant had infringed its claims numbered 20 and 23, by erecting a thawing shed at Curtis Bay. At that time the attention of the court was called to what was said to be a similar structure built at Arlington, on Staten Island, for the Staten Island Rapid Transit Company, which the plaintiff asserted was a mere agency of the Baltimore & Ohio Railroad Company, and had in this, as in most other matters, acted under the Baltimore & Ohio Railroad Company's direction.

After conference, it was agreed that it was not then convenient for either party to present evidence as to the Staten Island structure, or as to who was responsible for its being put up. It was therefore mutually stipulated that no inquiry upon this subject should be gone into, and consequently that no attempt should be made to assess damages to the plaintiff for such part, if any, as the Baltimore & Ohio Railroad Company might have had in its construction, maintenance, and operation. The right of the plaintiff to proceed thereafter against the Baltimore & Ohio Railroad Company, in law or in equity, for any appropriate relief, therefore, was expressly reserved.

The case, on the 19th of November, 1917, went to a decree, in accordance with the conclusions announced in the opinion already mentioned; that is to say, claims 20 and 23 were adjudged valid and

⊂⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

infringed, and the actual damages suffered by the plaintiff in conse-quence were fixed at $5,500, and were increased by $4,000, the esti-mated amount of legal expenses to which the plaintiff had been put, making a total of $9,500. The decree expressly stated that the award was confined to the thawing shed at Curtis Bay, and did not preclude the plaintiff from enforcing any rights against the Baltimore & Ohio Railroad Company for infringement elsewhere. It was further pro-vided that, upon payment of the $9,500 and the costs of the suit, the injunction heretofore granted should be dissolved as to the Curtis Bay plant, and as to that only. The Baltimore & Ohio paid the money, it took no appeal, and it is not questioned that the decree is binding on all parties to the cause.

On the 1st of February, 1919, the plaintiff, by supplemental bill, charged that the Baltimore & Ohio had infringed claims 20 and 23, by making and using a thawing apparatus at Arlington. At the hear-ing it was admitted (1) that the Baltimore & Ohio for many years had owned all the capital stock of the Staten Island Rapid Transit Com-pany; (2) that on the 6th day of June, 1916, the third vice president of the Baltimore & Ohio had recommended to his directors an ap-propriation for the erection of the shed, a recommendation upon which on the succeeding day they acted favorably; (3) that the cost of build-ing the shed was paid out of the money so voted.

[1] It is unnecessary to go further into this branch of the case. An infringement is a tort, and any one who aids in it is answerable for it. The Baltimore & Ohio offered evidence to show certain prior uses at Duluth, Ashland, and Bayonne, for the purpose, as it said, of narrow-ing the construction of the two claims in suit. The plaintiff objected to its admissibility, asserting that the construction, as well as the va-lidity of the claims, was res adjudicata.

The court ruled that the defendant was at liberty to show, if it could, that the Curtis Bay plant differed from that at Arlington, and that because of such difference the prior uses anticipated the latter, and not the former. The evidence was accordingly admitted, subject to exception, but it was subsequently stricken out; the court being of opinion that whatever probative force, if any, it had, was as ap-plicable to the Maryland as to the New York structure.

[2] As originally planned, constructed, and experimentally used by the building contractors, the Staten Island thawing shed was equipped with certain dampers. Subsequently, and before the shed was turned over to the Baltimore & Ohio, they were taken out, and the spaces in which they operated were closed, and they have since so remained. The dampers could be put back in a few hours and at a trifling ex-pense. With the dampers in place, claims 20 and 23 are infringed. Without these appliances, there is no infringement. If the injunc-tion now in force does not clearly forbid the replacement of these dampers, or any equivalents therefor, the plaintiff is entitled to one that will.

[3] The question most controverted, and indeed the only one upon which, in my view, there is much room for difference of opinion, is as to the amount of the damages to which the plaintiff is entitled. At the

instance of the defendant, plaintiff had had interviews with its officers, including the vice president, who subsequently recommended to the company's directors, the construction of the infringing plant at Arlington. It submitted plans and made a bid for the erection of the Staten Island shed, as it had formerly done for that at Curtis Bay. After all this, and with full knowledge of plaintiff's patent, the defendant gave the contract to another person, because the latter was willing to put up the structure at a less cost, and to furnish a bond against the consequence of infringement. After the Baltimore & Ohio's own counsel had told it that the shed it proposed to erect would infringe plaintiff's patent, it decided to go ahead, stating that, if any recovery was had, the surety would have to pay. Under such circumstances, it is clear that the plaintiff is entitled to be made whole.

The defendant wanted the patented structure. The fact that it paid $146,668 to the people who built it shows that it was ready and willing to pay at least that sum for it. The plaintiff proves that it could have put it up for $128,359. It loses, quite clearly, therefore, the difference between the two sums, or $18,309, by not being permitted to do so. It claims that it is entitled to the difference between what it would have cost to have put it up, and its own bid, which was $155,000. It is possible, although not probable, that if the Baltimore & Ohio could not have gotten it for $146,668, it would not have put it up at all. The Baltimore & Ohio, on the other hand, points out that the sum allowed as compensatory damages for the Curtis Bay infringement was $5,500. It is admitted that the shed at Arlington is twice as capacious and costly. It follows that $11,000 would be the equivalent in this case for the $5,500 allowed for the one at Curtis Bay. The plaintiff calls attention to the fact that such award for the Maryland structure was based upon the peculiarly low figure which the plaintiff had, under special circumstances, there made. That is true, and it was one of the circumstances taken into account in deciding to exercise the statutory authority to increase the damages, so as to cover what was believed to be the actual out of pocket expenditures to which the plaintiff up to that time had been put in enforcing its rights.

In a case presenting the special circumstances here shown, at least that much should be done. I am not, in view of the fact that the plant was never used in its infringing form by the defendant, inclined to do more. That it did not use it, however, is no reason why plaintiff should receive any less, for when it was seeking to build the plant, the defendant wanted and insisted upon having the infringing structure, and it was then that plaintiff suffered its loss.

The plaintiff's expenses in this branch of the case have been $7,418.85. $11,000 plus $7,418.85 foots up $18,418.85. I therefore award to the plaintiff damages in the amount of $11,000 for compensation, and increase the same under the statutory authority to $18,418.85, which exceeds by only $109.85, what appears to have been the smallest possible measure of damage to which the plaintiff could be held in any event to be entitled.

A decree will be passed in accordance with these findings.